Court. My name is Patrick Webb and I have the responsibility of representing the appellants in this case. A summary judgment and a new trial, summary judgment should be reversed and a new trial should be granted because the appellants are in fact designated beneficiaries of trust allotments. The evidence below points to the fact that the district court judge prematurely granted summary judgment, essentially taking a look at the Coast Indian Community case and reversing its actual holding, finding that an inference could be found that the designation here should have been to a tribe. The problem with that is in Coast Indian Community, the Federal Court of Claims had found just the opposite, on essentially the same facts, that where you have an association of Native Americans who were permitted to live on the property by essentially the Secretary of the Interior through the BIA, you have an inferential designation of those individuals as the designated trust beneficiaries and therefore entitling them to an allotment under Title 25 of the United States Code. The Coast Indian Community case has been followed in this circuit in U.S. v. Wilson and I'm reminded in preparing for this argument of George C. Scott's performance in the movie looking out at the American success and comments that, Rommel, I read your book. It's only upon the government filing their answering brief that we're finally provided the solicitor's opinions from the 1930s that show exactly where the deed language came from. In all the research we've done up to that point, I couldn't find an exactly analogous situation where you had what in essence is the missing language reported by the government as to what should have been in the deed. Here the government points that out in the answering brief and in our reply brief we go through the four or five examples that the government had provided to us in those solicitor's opinions, which clearly show why the Coast Indian Community case comes to the right conclusion that there was an inferential designation that this grant deed was creating beneficial rights in individuals, not in a tribe. Mr. Webb, if you're right, then your individual clients will be the owners of this land? They will be co-tenants, Your Honor, with about seven families. Okay. If you are wrong, then the tribe is the owner of this land? Not necessarily. The owner of the land never changes. It's the United States who holds title. In trust with the tribe? Well, in trust for some designated group of half-blood Hamool Indians that the government, this court could determine, has either made that designation or sent it back to have the BIA make that designation. Why isn't the tribe then an indispensable party? The tribe is not an indispensable party because it did not exist at the time the United States government accepted the grant deed from the Daley family. No. I mean, that may mean you win, but why isn't, why aren't they an indispensable party? Because they have to It goes to the merits rather than to whether they have the right to be heard and defend and so forth. That's why I don't believe the government can prevail on the indispensable party. I believe that's why the district court refused to consider the tribe to be an indispensable party, because the government never met its burden to show that the tribe had a protectable interest at the time the grant deed was accepted, because there was no tribe. And I think the cases, the Sac and Fox case, Kansas against Norton particularly, in the Tenth Circuit, is very clear about that. If the tribe doesn't have the protectable interest when the grant deed is accepted by the government, they can't come and argue that it's a competing interest between the tribe versus the individuals. There was, in fact, no tribe, which really goes back to, if we look carefully at how the government has prepared their response to this appeal, is to abandon what the district court's decision was, both at the time of the summary judgment and at the denial of the new trial motion. They don't want to argue what is clearly a triable issue of fact as to whether there was, in fact, some kind of ancestral tribe that had yet to be recognized in existence in 1978. That, under this Court's decisions in Price against Hawaii, would be clearly, I think, a triable issue of fact as to whether there was such a tribe. Government doesn't take that position on this appeal. The government comes instead and says, we admit there was no tribe. And yet, they try and argue what I think is an inconsistent position. If they admit that there was no tribe in 1978 when the grant deed was accepted, there is no protectable interest that would require the tribe to be a party to this action. Well, that may or may not be right. You may be right on the merits, but obviously there's a plausible position that the tribe is the beneficiary of this trust rather than the state of affairs, that the tribe has that plausible argument. I guess I come back to Judge Silberman's question. Why is the tribe, then, not an indispensable party under Rule 19? Because it did not have that protectable interest at the time the deed was accepted in 1978. But you're arguing the merits. So you're saying, well, the tribe's going to lose. Well, maybe it is and maybe it isn't. Well, I think this Court's decision in Pitt River answers the question. In other words, if the tribe was, in some government agent's mind, to be the ultimate recipient of some grant deed acceptance by the United States government of the dailies gift, then what's missing is what's set out in the solicitor's opinions from the 30s as to what should have been in the grant deed. You should have put comma after the, as to be designated by the Secretary of Interior, and then to any subsequently organized tribe under the Indian Reorganization Act. And in the five examples in the solicitor's opinion, starting with the ones with the Mississippi Choctaws, where that language is not there, and then to a subsequently organized tribe, the original acceptance of the grant deed can only be on behalf of the individuals, which is why Coast Indian Community comes out the way it does, and Pitt River comes out the other way. Because in Pitt River, 30 years after the grant deed was accepted, there the United States designated the subsequently organized tribe, which the BIA could do here, but they have not yet done so. And this is not one of those where ignoring that accomplishes the designation. It's the other way around, as Coast Indian Community finds. By ignoring it and merely allowing the people acquiescing in my clients and their families living on the property for 25 years, that is what creates a designation as a matter of law, and essentially a matter of estoppel at this point, for the government, who has not subsequently come along and formally designated anybody, neither my clients nor the subsequently created tribe. Does the government today have the power to designate the tribe? It has the power. Whether it would or not would be subject to its own regulations, and we'd have to go through the administrative process to see whether that determination would be made. Does the government have the power to designate these particular individuals as the beneficiaries? Yes, and I think the facts... Without going through the regular role that you just described as to the tribe? I'm not sure I understand that question. I think it's the same process. They could come along, the government could come along now and essentially create the trust patents and issue the trust patents in the individual's names. The government could also come along and say they want to designate the subsequently created tribe as the new beneficiaries of that grant deed from 1978, but until they do that, the title document governs, which is the grant deed recorded in San Diego County. How do you respond to the government's argument that this is in effect a quiet title action, and that because of the exception to the quiet title action, the United States has sovereign immunity to this suit? Again, the Tenth Circuit, I think, answered that for us in Kansas against Norton and says quite clearly, if there's no challenge to title... Now keep in mind, it is our position, and I think we're very clear in all the briefing below and here, that we're making no challenge to title. Title is held by the United States. The question is something less than title, and essentially a non-ownership issue that has a bundle of almost fee simple, but not individual clients designated beneficiaries of a trust allotment, or were they not? Well, title is a tricky word here. There's legal title, which unquestionably is in the United States, and the issue really seems to be where is the equitable title? And there again, Kansas against Norton, I think, is quite clear. The difference is changing reservation boundaries, for example, in Kansas against Norton is not changing who owns title, the actual recorded title to the property. The United States is going to continue owning it, but you're changing boundary lines within something that the United States owns. Here, whether you're talking beneficial ownership or a designated trust allotment, whichever generic term, as in Cohen's book, these are terms of art that have been adopted in Indian law to describe something less than fee simple title, none of it rises to the level of a whole line of cases from, and I can't pronounce the name correctly, Huyutzen-Milken versus Smith, 1919, and all the cases in this circuit, Arenas, U.S. against Clark, finding that there were trust allotment violations under Title 25, Section 345. None of those cases could exist if the Quiet Title Act exception for Indian trust land were to come along and eliminate those claims. You can't have a 345 action if that exception of the Quiet Title Act is going to swallow the rule. But that says to a 345, that says to allotments, this may or may not be an allotment. This may merely be designation of beneficial owner, designation of who has the equitable title. And I think that's... Are you saying that the Quiet Title Action does not include equitable titles? It only includes legal titles? I don't think the cases are clear one way or the other. Our position is, anything less than legal title that you're talking about, here, beneficial ownership as described in the generic terms designated beneficiary or a trust allotment, is something less than a challenge to title. Title is held by the United States. No appellant is challenging that. And because of that... Legal title is held by the United States. That's correct. Kansas against Norton is the case that I think most carefully analyzes that and says, if you're not challenging legal title, whatever else you are challenging inside that, you have a right to if it rises to the level of a trust allotment. And here again, I think the government concedes in its silence in what they can't say or don't say in any of the responsive briefs here. From Cohen's book forward, from essentially 1982, and then when Congress mandates that his book is going to become the federal handbook on how to handle these issues, any acquisition under 465 of Title 25, which is what this acquisition says on the face of the deed, that it's being accepted as a gift from the dailies to the United States, should be treated as any other form of trust allotment. The deed says it's a grant. Was it, in fact, a gift? That is to say, was it a grant for essentially a donation, or was it a purchase? I don't recall there being any money transfer, and I don't recall the documentary tax that's It recites for consideration, but that may just be a boilerplate. I thought it was a $1. Maybe I misread it. I think it was $1 in the 1912 transaction with the Spreckles family and the Coronado Beach Company for the other pieces. But essentially it's a gift. Essentially. And it's been treated by the dailies, I think, that way since 1978. Did they have a reversionary interest if it doesn't go to where they think it ought to have gone? I don't think so. We looked at that under California law, and best I can tell, there is no reversionary interest. The dailies made their gift. It stands on the face of the grant deed, and Your Honors have to look at that grant deed and interpret what that means. And I think after Coast Indian Community, it ought to be clear that it was a designation of the individuals as the recipients of a trust allotment as opposed to some expectation that a subsequently organized tribe might occur. And I might emphasize, as we try to in the briefs, that in 1978 there was no certainty that a tribe was going to get organized. And subsequently, the history of this particular tribe after it got recognized three years later in 1981 in all of the administrative appeals over the membership and leadership issues, it's no wonder that my clients are in a position of not wanting to change their individual ownership rights, if you will, and give it to some government that has had all of this trouble in the last 20 years in maintaining proper membership and leadership records. Let me ask you this. This is more a practical question than a fine-grained legal question. What would the practical consequence be if you were to prevail? I mean, why do your clients want this? Are they wanting to stay there or are they wanting to say, well, you can build the casino here, but you have to buy us out first? I mean, what's practically at stake? There's one primary reason. Both of my clients that are still alive, Marie Tagri has passed away and her daughter, Karen, is representing her representative interest. But Walter Rosales and Karen Tagri believe that the Daly's gift, if you will, was to provide a place in perpetuity for their families to reside. They do not want any other form of development on that four and a half acres, 4.6 acres. And thus, it's not an issue of trying to be bought out. They want to live there and that's where they have their houses. There are alternatives to them. They could live in town. They could live elsewhere. They choose to live where they receive this grant deed because that's where their families have been for almost 100 years. And that is, despite all of the money issues that might be there, if some other development, a casino or something else were to be put on that property, they are willing to forego that because the property means that much to them. There have been no depositions taken in these cases, but the government will be subject to inquiry, I suppose, as to what the Rosales's and what the Tagri's would be doing with the property and why it means so much. I can elaborate for the Court's benefit, but it's not part of the record. It's not in the record. I'm not sure I want to discuss it. Okay. There's a lot of cultural significance to the property is what I'm trying to get across and there have been discussions informally when we were trying to resolve this in front of the magistrate where these things were discussed, but it's not part of the record before you. We have about four minutes left. Did you want to reserve some time or do you want to use it all up now? I think I would like to reserve the time, Your Honor. Thank you. Certainly. Good morning. Good morning. May it please the Court, Katherine Barton for the United States. This case involves dissident members of the Hummel tribe trying to strip the tribe of the parcel that constitutes the majority of its reservation. The tribe, for the past 20 years, has governed this parcel through its elected council. The reservation is its sole asset and the Indian Reorganization Act was passed, in fact, under the recognition that tribes and land go together. Once you don't have land, it's hard to maintain a tribe and that's why we lost so many tribes during the allotment period. Here, the result of this case, they would render the parcel owned by individuals disputing among themselves as tenants in common. This is an internal dispute that should be resolved within the tribe and is part of many, many cases that these same individuals have filed regarding internal disputes against the tribe. Now, that sort of ties into the two jurisdictional or quasi-jurisdictional, non-merits reasons for why this case should be dismissed. And the first is the Quiet Title Act bars consideration of this case. The appellants are wrong that you have to dispute fee title to have that that's all that the Quiet Title Act covers. I mean, this court, we have in our brief, we've cited cases that show that a less-than-fee simple title interest to disputed property are covered by the Quiet Title Act. What are those cases, Counsel? The case I cite here is Albert. I think it's called Alaska v. Babbitt. There are two of those. One of them deals with an Albert allotment. 38F3rd, the pinpoint site, is 1074. But this is quite common. I believe the Lesnoi, L-E-I-S-N-O-I case that has been through this circuit three times involved a less-than for title. But are there cases that are more specifically applicable to what we have here, which is to say the dispute is not as to the legal title owner. The United States holds the legal title. The dispute is who has the equitable title. Are there cases that say that the Quiet Title Act applies to such a dispute as to say who is the beneficial owner or who has the equitable title? Well, the case, right. What that question actually asks, to my mind, I think, is who is the beneficial owner. And I think that's what we're trying to figure out here. Is the United States title disputed when that legal – when it's legal title, that it will still stay in trust? The United States will own it in trust? The only issue here is – Because it has to be the United States title that's disputed. You know, not the – the – I mean, for the Quiet Title Act. In fact, if they're not disputing the United States title, then we shouldn't be here in court. Well, I don't think they are disputing the United States title. The United States is the legal title owner. They're disputing who is the beneficial owner. No, but we maintain that they are, actually, because the trust interest is the flip side of the coin of the beneficial interest. We hold the legal title in trust for somebody. But your legal title remains in you no matter what. The only question is to whom do you owe the beneficial ownership? That's true, but we – but that is part of the – that is – that is part of the title. Who we hold legal – who we hold it in trust for is the flip side of the beneficial – Then I'll come back to the – Okay. So then you're saying – Do you have a case that says that the Quiet Title Action applies to this sort of title dispute, that is to say, where the issue is who is the beneficial owner? No. I do not have a published case. I do have unpublished cases in this circuit. But I do not have a published case. Just – I don't have one either way. We have – I have actually briefed another case similar but didn't go to – it was dismissed by the tribe before it was brought – the question has come up, but I just haven't seen it addressed one way or the other. But we do believe – I mean, they – clearly the – an attack on Indian – lands held in trust for Indians are covered by the Quiet Title Act, or otherwise it wouldn't have to be an exception. The exception, of course. So, obviously – so the question is, does the dispute have to be – go to the entire both beneficial and legal title? Does it have to be attempting to strip the United States and the tribe of their title, which is another way of saying, is it another – is there an Indian interest on the other side? The only way the United States title cannot change is if it's Indians on both sides. And there is no exception in the Quiet Title Act for that the Quiet Title Act doesn't apply when Indians are bringing a claim against the United States for Indian trust lands. Well, I'm not quite sure that's true, meaning there could be a fight between a non-Indian would-be owner and the United States, both of them contesting legal title. And if the United States wins, it holds legal title in trust for the Indians. If the private party wins, well, the private party wins, and it turns out the United States didn't have title. Like, you could have that. Correct. But now, obviously then, if the United States is stripped of its legal title, that is a Quiet Title Action. But then the exception would apply, I guess, because it's the title that the United States holds in trust. Exactly. So you could have that exception, and it would make sense in that context. I don't – well, the exception – I'm sorry, I think I've lost you. Turn to Tom. As I understood your argument, you were saying, well, the exception to the Quiet Title Action and the waiver of sovereign immunity makes sense only in the context of a case like this, because the only kind of a suit to which the exception could apply and the waiver of sovereignty did not be good is when the dispute is between potential beneficial owners when the United States holds title. No, no, I did not mean to say that. I meant the concern about whether the United States – whether a claim against the United States' legal title only was sufficient. Clearly, if the United States is stripped of its legal title, that is a Quiet Title Action. The question here is that the United States won't be stripped of its legal title. And what I'm saying is that's the equivalent – the only situation I can see where it's – the question is the United States will still hold it in trust just for somebody else. My first argument is the trust title carries with it a pointer to a particular individual, and when that trust title is changed, that's a different, actually, title. It's part of their – they're two sides of the same coin. But if you don't buy that, which was – I would still say that the only case in which that can arise, that the United States maintains a trust interest, is when one tribe or set of Indians are claiming that it's held in trust for them versus the other set of Indians. And that's basically reading an exception for Indian plaintiffs into the Quiet Title Act, which simply isn't there. And the Quiet Title Act has been held to apply against Indian plaintiffs, like in MOTAS, claiming land that's held by the United States in fee. It makes little sense that they can then claim tribal lands, especially when the whole point of the exception is to retain those tribal lands. And here, I mean, there's a good – if internal disputes in tribes can be brought to federal court by raising claims about who owns land ownership internally, it creates a huge loophole, both to tribal governance and to the Quiet Title Act. And then we move on to, unless you have any more questions about Quiet Title, indispensable party, even if – Counsel, before we go there, do you agree with opposing counsel that the General Allotment Act applies because any land that's conveyed under the Indian Reorganization Act is the same as an allotment? I think that's his argument. No. No. Section 25 U.S.C. – 25 U.S.C. Section 345 was enacted in 1894. It provides for a right to – it waives the United States' sovereign immunity for claims for the right to an allotment under any law or treaty. The Allotment Act covered only grants of allotments to – out of public land, Indian reservations, or national forest land, after Indians had met criteria often similar to homesteading, settling on the land, and proving up that they had a right under these statutes. That was – that's what an allotment is, and that's what it was in 1894. It's – if you view this with the Quiet Title Act, it makes sense. It's an important distinction. Well, if – leaving aside the Quiet Title Act, did the Court have jurisdiction under the General Allotment Act? No. And why not? No, because they are not claiming a right to an allotment under a law or treaty. They didn't have any right to – I mean, when was the allotment made? Was the allotment made when the United States acquired the land? That's an allotment? I mean, there's no definition by which that – The United States was not the grantor. Is that the whole – is that what you're saying? Because – Essentially, yes. Yes. And that's what I was – the point I was going to make about the Quiet Title Act was 25 U.S.C. 345, the right to an allotment, doesn't authorize the Court to determine whose title is in effect. It authorizes the Court to direct the Secretary to take an action to make the allotment that hasn't been made. Here, there's no – there's not a claim that there is an allotment that they had a right to that they established by homesteading on that was made. This land was acquired – you know, it was acquired at the Secretary's discretion. It's – they're entirely different concepts in law. And, in fact, no – there's really no allotments made since the Indian Reorganization Act. I mean, you can't do it out of reservations. Public land – public domain land is closed to settlement for all intents and purposes. You'd have to get a rechange in classification. Well, actions have been brought under the General Allotment Act. Once an allotment has been made, isn't that true? Well, there are two – first, there are some allotments still occurring in Alaska, not in the lower 48. But Alaska has sort of a whole different set of circumstances with Alaska Natives. There are also 25 U.S.C. Section 345 claims that pertain to allotments that have already been granted but are in relation to allotments. And this distinction is made in MOTAS, that 25 U.S.C. provides jurisdiction for both kinds of claims, both the initial right to get an allotment and the right to – if you already got your allotment, but you're saying, like, the United States alienated it, which may be – is another way of characterizing what they're saying here. Those are both – jurisdiction is provided for both of those, but waiver of sovereign immunity is provided only for the grant of an allotment. Because the court determined that claims in part – that was based on the reading of the statute in MOTAS. MOTAS read the statute that way and also found that was – made the most sense in conjunction with the Quiet Title Act, because otherwise 25 U.S.C. 345 would allow people to get around, like the longer statute of limitations and other provisions in the Quiet Title Act. So just so I understand your argument, is your argument that the General Allotment Act generally can provide jurisdiction, but it didn't in this case because the United States didn't waive its immunity as to this particular grant? I don't get your argument. No. My argument is it's not an allotment. Okay. It's a grant – it has to be a grant from – it has to be one of the allotment provisions, 334, 337, I've got them in my – from a public domain land from National Forest, to which they had a right, but the Secretary has not somehow followed through with meeting that. When an allotment is made of the sort you described, does title pass then to the – to the person to whom the allotment is given? Are they then the fee simple owner of that property? Not any longer. There was a time during which there was a period it was held in trust for I think what has happened – of course, like I said, there's no more allotments from Indian Reservations. It may be open-ended that the Secretary can just extend the trust allotment period, but there's no right to a fee simple title, and I'm not aware of the Interior Department isn't aware of that. What does the recipient of an allotment get when you could get one? I mean, what does that entitle the person to? The land is held in trust for them. Personally? I mean, as a – Yes. Yes. But the title is still held by the government. Legal title. It's held in trust, just like this – just like this land is held in trust for the tribe. I mean, an allotment is held in trust now. There are some allotments around that are held in trust for individual Indians. In this case, they're claiming that this is sort of a group allotment, which also I don't know of existing, in which they would hold it as individuals, but as tenants in common, subject to partition. Land could be divided up. I guess I'm not really clear on how allotments work. Are these kind of like life estates? I mean, can somebody transfer the recipient of an allotment? An allotment is just another term – an allotment really was just a way for the Indians to get the land. You know, to get – what it was was trying to parcel that land, excuse me, out of reservations initially to assimilate Indians into society and get rid of the reservations. I mean, that – it started out with cutting up the reservations by just allowing them to have a way to become like homesteaders, but – and eventually they would get fee title. And that was the whole idea behind allotments. And then they did a public domain to allow – because Indians couldn't homestead, they said, well, they shouldn't have to just get this land out of reservations. They should also be able to get it out of public domain like anybody else. So they made up a few other provisions. But this whole – this was all before the Indian Reorganization Act in 1934, where the whole policy of the country was to try to assimilate the Indians or, you know, or make land available for the white settlers, practically. And that is in fact what happened. Ninety million acres passed out of Indian hands as they gained fee simple title and then sold it to white settlers. And it broke up a lot of tribes, and that's what led to the Indian Reorganization Act, which put a halt to allotments and allowing the land to go into ownership, fee ownership, you know, essentially – certainly from reservations prohibiting it. Well, are there any suits brought under 345? In – as I said, in Alaska – That's the only – where this game is played? And I think there could be still some suits dealing with preexisting allotments, not to the ones that the United States hasn't waived sovereign immunity for. It's a little complicated. If you read MOCAS very carefully, seven times, like I did today, they're – the only place that the United States has waived sovereign immunity, according to the Supreme Court, is for the initial right to an allotment. And it's outside of Alaska that I'm unaware of any of those, because it's just been so long. We've been distracting you from the Rule 19 argument. I'd like to hear you on that. Yes. The argument from the other side is that Rule 19 doesn't apply here, because at the time of the original grant, the United States entrust for the then undesignated Indians, the tribe didn't exist. Right. Well, that's just another way of – as a circular argument of saying we went on the merits, and therefore the tribe isn't an indispensable party. I mean, that's – Has there been an attempt to make the tribe a party? I'm unaware of any such attempt. I mean, you're the – Have we tried to bring them in? Yeah, right. I mean, you're the one who's supposed to move to bring them in if they can't get – Well, no, they have sovereign immunity. I mean – Well, but sovereign immunity can be waived. Have they asserted it? No, they haven't. Have you tried to bring them in? No, we haven't. Is the requirement for a Rule 19 dismissal that the defendant making the Rule 19 dismissal motion to showing that the party's unavailable? I'm unaware of that. So you made no Rule 19 motion for dismissal below? No. The – this case has been a moving target in terms of its argument. You can see in the district court's opinion, the district court thought – in fact, said that and said they were asking for a fee-simple title, and then they said, no, we're asking for trust title, and, frankly, our people took this to be more of an APA kind of action initially. So we only got to the indispensable party and quiet title arguments in a reply. I mean, I saw the argument in one of your briefs that you filed below, but it kind of shows up in a footnote. Right, in reply. You mentioned the rule, and I saw no motion under Rule 19 for a dismissal. No, it was because it was to – by the time they understood the case to be what it's developed to be, they were beyond the early stages. So we are making the indispensable party argument here. We believe that actually any kind of indispensable party argument, such as in this case, should be unnecessary because quiet title – the Indian Trust Line's exception to the Quiet Title Act would always prevent even getting to that point, although I'm not sure that you have to do them in that order. But – But we've got no case on – absolutely on all fours as to quiet title. I understand you're – Well, Pitt River is very similar. But – Pitt River is very similar. Oh, that's the quiet title. I'm sorry. No. No, you're correct. I don't have a published case that has held where there's trust claims of beneficial title by Indians on both sides. It's just a natural reading of the statute in terms of the Quiet Title Act. Indispensable party, I won't go through the analysis because it's so similar to Pitt River. I don't know if there's – there were Indians on both sides. In any case, for somebody's – Now, I can't speak for my fellow panel members. If we had had a proper Rule 19 motion below and it's showing by you that the tribe would refuse to become a party because it would refuse to waive its sovereign immunity, which I think is fairly plausible. Yes. Certainness. But – It seems to me that the tribe's indispensable. But I'm not sure what to do with the fact that we didn't do that below. Well, I don't know. I mean, there's lots of cases where this Court has addressed the indispensable party issue for the first time on appeal, and I have not seen any analysis of, you know, of an attempt to join the party. I have some in my book. I believe Pitt River is one that actually wasn't dealt with below. Pitt River, it was – no, Pitt River, it was addressed at the district court level. It was? Okay. Then I'm not – but I did cite some in my brief, which I can find. Okay. I see I'm just about done. I do want to say on the merits, the language in the deed is not perfect. It would have been better if the language in the deed said, and then to the tribe, as is organized. But the language is ambiguous. It is not clear. It leaves open for the secretary to designate who the owner is, and the record is very clear the intent of the secretary in accepting the donation was to establish the tribe. It was the whole purpose, and there's the March 1978 letter in the record that says, okay, now the land is ready. We're ready to acquire it and provide a reservation for the village. And the whole reason that Interior has done these actions, these purchases, acquiring land into trust and allowing Indians to form tribes grows out of the Indian Reorganization Act of 1934. These purchases. But this land was or was not purchased? I'm sorry. Acquisitions. Acquisitions. You're right. It wasn't – it was – I mean, I think it's immaterial whether it was paid for or not. It was still acquired. Okay. Your time's up. Okay. Thank you very much, Ms. Barton. Thank you. Mr. Webb, you get the last word. Thank you, Your Honor. Three things. Let's address Ms. Barton's last comment, admitting that the language could be better. Admitting that the language in the grantee could be better admits that Coast Indian Community controls, and there ought to be an inference that the designation was to individuals only. That's how Coast comes out and is completely consistent with this Court's decision in that there was required to be a subsequent formal designation to get it in the hands of the tribe. That's missing here. At the record, page 177, is Ms. Fascio's memo back to Washington indicating that this parcel was never known as the Humul Indian Village. Therefore, the subsequently recognized government has never exercised jurisdiction over this parcel. That admission means my clients are entitled to be individual designated trust beneficiaries of this allotment. Let's talk about Rule 19. There is no protectable interest in the tribe. It is not a circular argument. It's an argument the government can't win because there was no tribe when the grant deed was accepted. So that brings us to No tribe in Pitt River, was there? I'm sorry, Your Honor? No tribe in extent at the time of the commands of Pitt River. And that's why the government came along and made a formal designation after the tribe comes into existence in the 1980s. There was a formal designation of the tribe as the beneficiary of that ranch in 1987, contrary to when the grant deed was accepted in 1934-5 in Pitt River. That's the big distinction. And that brings us back to Ms. Barton's argument about General Allotment Act and whether that applies. This is a true 345 case. What the government ignores in today's argument is that they should be stopped to make any given what Cohen's book says as to all forms of trust acquisitions under Title 25, Section 465, which is the section cited on the face of this deed that the government is accepting the deed. All of those kinds of trust acquisitions should be treated equally as trust allotments. What section of Cohen's treatise are you citing? Pages 40 and 41 and pages 615 and 616. At the record, they were at pages 320 and 21 and 330 and 331. The Congress saw fit to extend the indefinite nature of the trust allotments after the 1934 Act was adopted, such that we no longer have this, in answer to Your Honor's question, whether title goes to the individuals or not. It never goes in fee simple. And this Court's decision in U.S. against Clark in 1976, I think, makes that clear. This is in 529 F. 2nd, and the jump site is at, I can see it here, 986. Legal title remained in the government, but as against all except the United States, Ms. Tabetheit was vested with all the incidents of fee simple title when she entered. And that is what happened here. In answer to Your Honor's question, as soon as the deed was accepted, the individuals had the right to ask for a trust patent to be issued. The fact that ministerially the trust patent never got issued is irrelevant, as the cases in this circuit for 40 years have made very clear. It's something that the government is required to do. And under 345, my clients have the right to come and compel the government to issue the trust patent. But the acceptance of the deed is what creates their everything but fee simple title rights in the property. Now, that brings us, I think, back to Your Honor's question about the Quiet Title Act and why it really doesn't apply here. The Kansas decision in one paragraph, I think, summarizes this and gives the Court two other citations to look at. In Navajo Tribe of Indians v. New Mexico, a 10th Circuit 1987 decision, and this is at page 1225 of 249F3rd, the Kansas case, we explain that adjudicating reservation boundaries is conceptually quite distinct from adjudicating title to the same lands. Down a few lines. Actually, continuing directly on. Similarly, adjudicating the question of whether a tract of land constitutes Indian land for Indian gaming purposes is conceptually quite distinct from adjudicating title to that land. One inquiry has little to do with the other as land status and land title are not congruent concepts in Indian law. We are seeking status as designated beneficiaries of a trust allotment. We do not challenge the United States title. The United States will continue to have title if we prevail here. The Court continues. A determination that a tract of land does or does not qualify as Indian lands within the meaning of the gaming statute in no way affects title to the land. Similarly, here, designating the individual Indians as the beneficiaries of the trust allotment versus anybody else under the sun does not affect title. Title stays in the United States. At the same page, the Court in Kansas concludes, because the action does not seek to quiet title to the tract, the QTA, Quiet Title Act, does not apply. It does not apply in this case, and for those reasons, because our clients are designated beneficiaries of the trust allotment as in Coast, the summary judgment should be reversed. Thank you, Your Honor. Thank you. Thank you, Ms. Barton. The case just argued is submitted.
judges: Silverman, W Fletcher, Rawlinson